WALRAVEN v. RAMSAY.

1. PARTNERSHIP—LIMITED PARTNER'S CONTRIBUTION—STATEMENT IN CERTIFICATE—AGREED VALUE.

The term "agreed value," as used in certificate of limited partnership with reference to contribution by a limited partner, is considered to have the same meaning as "actual value", so far as concerns the rights of third parties who rely on the certificate to their detriment (CL 1948, § 449.206).

2. FRAUD—CERTIFICATE OF LIMITED PARTNERSHIP—STATEMENT OF VALUE OF CONTRIBUTION—EVIDENCE.

Testimony in action against limited partner for fraudulent statement in certificate as to amount of the value of his contribution thereto because of which plaintiffs extended credit to the partnership to their detriment *held*, sufficient to present question of fraud to jury, where it appears defendant had purchased his half interest in the real property involved for $7,500 but stated shortly thereafter in the certificate that it had an agreed value of $25,000 (CL 1948, § 449.206).

Appeal from Bay; Leibrand (Karl K.); J. Submitted October 10, 1952. (Docket No. 44, Calendar No. 45,576.) Decided December 9, 1952. Rehearing denied January 15, 1953.

Action by Frank J. Walraven and another, copartners under name of Walraven Bros., against W. Selwyn Ramsay for damages resulting from false statements in certificate of limited partnership. Verdict and judgment for plaintiffs. Defendant appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] Generally as to certificate of limited partnership, see 40 Am Jur, Partnership § 507.

*Hellerman & Bielawski (Charles A. Hills,* of coun-sel), for plaintiffs.

*Hand & Hand,* for defendant.

Reid, J.  Plaintiffs, as copartners, sued defendant Ramsay for damages resulting from credit extended by plaintiffs to Shady Shores Development Company, a limited partnership in which defendant was a partner with limited liability.  Plaintiffs count on falsity of statements, hereinafter more fully set forth, which statements are contained in the certificate of limited partnership signed by defendant. Plaintiffs claim that defendant made such statements knowing them to be false, and claim they relied on said statements to their detriment.  The statements recited in part that certain property contributed by defendant to the limited partnership was of the "agreed value" of $25,000.  Defendant has appealed from a judgment on the verdict for plaintiffs.

The "uniform limited partnership act" of the State of Michigan,[*] among other things, contains the following in section 6 (CL 1948, § 449.206 [Stat Ann § 20.56]):

"If the certificate contains a false statement, one who suffers loss by reliance on such statement may hold liable any party to the certificate who knew the statement to be false.

"(a)  At the time he signed the certificate, or

"(b)  Subsequently, but within a sufficient time before the statement was relied upon to enable him to cancel or amend the certificate, or to file a petition for its cancellation or amendment as provided in section 25(3)."

Frank J. Walraven and William A. Walraven, the plaintiffs, are brothers and have been in the excavat-

---

* PA 1931, No 110.—Reporter.

ing business in and around Bay City for several years and are partners doing business under the firm name of Walraven Brothers. Plaintiffs have (evidently over a period of years) bought 10 or 12 machines from defendant or the company of which defendant is the founder, Bay City Shovels, Inc.

Cline Bagwell seems to have been familiar with real estate transactions in and around Bay City and is indicated by the testimony as having been a good salesman.

James E. Davidson was the owner of about 29-1/2 acres of land having a water frontage of 2,088 feet, fronting on Saginaw Bay, near Bay City. Bagwell interested himself in the matter of purchasing the Davidson parcel. Davidson offered to sell the parcel to Bagwell for $20,000. Bagwell approached defendant Ramsay in mid-summer of 1946 respecting the Davidson parcel and told Ramsay that the price was $30,000. Defendant thought $30,000 was too high a price. On August 8, 1946, Davidson and wife signed an agreement to sell the lands to Bagwell (who acquired same in the name of his son James H. Bagwell) for a price erroneously stated in the contract at $15,000 but actually for $20,000. Shady Shores Development Company accepted the assignment from Bagwell to Shady Shores Development Company on November 15, 1946.

Certificate of jointure in limited partnership under name of Shady Shores Development Company, was signed November 15, 1946, by Cline Bagwell as (sole) general partner and by W. Selwyn Ramsay (defendant), S. Dillon Foss and Betsy B. Foss, as limited partners, the last named person being the wife of S. Dillon Foss.

Cline Bagwell was the active person in procuring the formation of the limited partnership and conducting its affairs. Bagwell died in May, 1947. Bagwell was the only general partner and the partner-

ship was dissolved at his death. None of the surviving limited partners was willing to carry on the business of the partnership, Shady Shores Development Company, which went through bankruptcy and its property was sold.

Witness Van Colen, a real estate broker, testified that the value of the Davidson tract, on November 15, 1946, was $16,500. The unpaid bill of plaintiffs for excavating done for the Shady Shores Development Company was $4,744.21. There is a want of testimony in the record that any improvements to the property in question, to any extent enhanced its value between August 5, 1946 and November 15, 1946.

Testimony was given by Mr. Foss, a limited liability partner, to the effect that he paid $5,000 for a 1/12 interest (in the Davidson tract) and that Mrs. Foss paid $5,000 for another 1/12 interest on the basis of representation by both Mr. Ramsay and Mr. Bagwell that, "This property, which Mr. Bagwell and Mr. Ramsay contributed, had originally been purchased for the sum of $30,000, of which $15,000 had been paid in cash and $15,000 was due and owing, that was my understanding."

Defendant testified as follows on direct examination:

"That property—the value of the property was undetermined. I saw the property and intended to develop it. It was regular resort property. Bagwell and I estimated that it might cost us $80,000 to improve it, and we expected with 227 lots, which were to have been platted, we ought to average $800 to $1,000 a lot, which would be $227,000 at $1,000 a lot, and that we would have a profit of from $120,000 to $150,000. And when we made the sale to Foss, we put a valuation on the lots as it stood in there, as $60,000. We weren't buying those lots to sell as residential lots without improvement.

"*Q.* So, I ask you, Mr. Ramsay, when you sold a 1/6 interest to Foss you sold it on your opinion that the property was worth $60,000?

"*A.* Oh, easy. We thought he got a bargain on the basis of our plans and expectations."

Defendant on cross-examination testified as follows:

"I testified that Bagwell came to me and said that James E. Davidson wanted $30,000 for the property and that I thought the price was too high, thought it was a big price, but knowing Davidson I wasn't surprised. I knew Mr. Davidson very well. We were good friends and neighbors and worked together on various enterprises.

"I had no idea what the property was worth, but that was what he wanted and we paid it. That's what we agreed to pay. It never was paid. I agreed to pay $30,000 for the property.

"Between August 8th, when this contract was signed, and November 15th, I don't think any improvement work was done to the property outside of cutting brush, except probably grading roads a little bit there.

"I haven't any idea of the value of that improvement. I wouldn't guess at all. I don't know. I don't know what the work cost. We paid Walraven his bill.

"*Q.* You only owned in the inception a half interest, you say?

"*A.* Yes, sir.

"*Q.* For which you paid $7,500?

"*A.* $7,500.

"*Q.* And you sold a 1/12, leaving you 5/12 I believe?

"*A.* I had 5/12 and Bagwell had 5/12.

"*Q.* You had 6/12 to begin with?

"*A.* Yes.

"*Q.* And you sold 1/12 for $5,000?

"*A.* Bagwell did.

"*Q.* Bagwell sold his and you sold yours?

"*A.* Bagwell sold it.

"*Q.* You ended up with 5/12, is that correct? And you still owed $15,000 on the property?

"*A.* According to what Bagwell told me. Apparently, we didn't according to the record.

"*Q.* Now, on November 15th, you signed a statement that the value of 5/12 of this property, for which you thought $30,000 was too high a price, was worth $25,000?

"*A.* On the basis of the development work, yes.

"*Q.* And what development work had been done?

"*A.* Well, it was a big program for a lot of development work to be done, and when Bagwell sold that interest to Mr. Foss, he set his value on the basis of $60,000. That was like selling some stock on that basis of the development work.

"I didn't have stock to sell. This was not a corporation, but I had an interest and you can call it an interest in stock, whatever you want to. I had an interest originally in a piece of property the record shows was sold for $20,000, on which $5,000 was paid.

"*Q.* And $15,000 is owing. Now, Mr. Ramsay, half of this—you still owed $7,500?

"*A.* $15,000 has nothing to do with the value we placed on this property. We could still put seventy-five or a hundred thousand.

"*Q.* You could have put seventy-five million?

"*A.* Yes, but that would have been unreasonable. but anything within reason—"

The fraudulent statements counted on by plaintiffs, and appearing in the certificate of limited partnership, and signed by defendant (under the caption, "The amount of cash and a description of and the agreed value of the other property contributed by each limited partner is as follows") are as follows:

"W. Selwyn Ramsay:

"One-half interest in the vendee's equity under a certain land contract covering real estate situated in the township of Bangor, county of Bay, State of

Michigan, described as follows:  *  *  *  [Here follows a description of the real estate, the Davidson parcel.]

"The agreed value of said half interest in the above described property is $25,000."

For a discussion of the meaning of "agreed value" and "agreed valuation," see 3 Words and Phrases, p 10.

For the purposes of determining the issues involved in this case, we consider that the words "agreed value" in the certificate have the same meaning as actual value, so far as concerns the rights of third parties who rely on said certificate to their detriment.

The jury could have found that the value of the Davidson tract, as indicated by the purchase by Foss, should be disregarded, because it was a purchase induced through reliance by Foss on statements of defendant and of Bagwell, 2 highly interested persons, and not brought about by the exercise of judgment on the part of Foss himself acting on knowledge otherwise obtained by him.

There was testimony from which the jury could find the fraud counted on by plaintiffs. The jury could have found under the testimony that defendant purchased his 1/2 interest for $7,500 in the tract in question, which tract was purchased from Davidson for $20,000, and that defendant's 1/2 interest to defendant's own knowledge was not worth $25,000 at the time defendant signed the certificate of limited partnership.

Plaintiff Frank J. Walraven testified that he procured attorney Bailey to examine the certificate of limited partnership, and that the attorney reported to plaintiffs the recital in the certificate counted on by plaintiffs, before plaintiffs extended credit to the limited partnership.

Plaintiff Frank J. Walraven on cross-examination testified:

"*Q.* So that what you were doing was relying on Selwyn Ramsay's judgment?
"*A.* That's right."

Further on in the same cross-examination, witness Walraven testified in answer to the question, "What did you rely on?":

"*A.* I relied on Mr. Ramsay and Mr. Bailey advising me that he was in it for $25,000. I thought if he was in it for that much, and Mr. Foss was in it for that much, disregarding Mr. Cline Bagwell's interest, it was a perfectly legitimate job to give credit on."

On redirect examination, witness Walraven testified:

"My confidence in Mr. Ramsay wasn't the only reason for giving this credit. The Fosses were in for $10,000 and Mr. Ramsay put in $25,000, and I thought with $35,000 of good money in the thing we could extend $5,000 to $10,000 on notes payable that summer."

The witness also testified that defendant gave him to understand that he was in it for $25,000.

To sum up:—There was testimony from which the jury could find that plaintiffs relied on the statement in the certificate that defendant's contributed property was of the value of $25,000 and that that statement was false to defendant's knowledge, and that plaintiffs relied on that false statement to their loss and damage. The plain and unequivocal words of the statute, hereinbefore quoted, afford to plaintiffs a remedy under the finding of facts evidently arrived at by the jury.

There was testimony from which the jury could find for the plaintiffs for $4,744.21 plus interest.

The verdict for plaintiffs was for $5,981.62. The judgment had thereon is affirmed. Costs to plaintiffs.

ADAMS, C. J., and DETHMERS, BUTZEL, CARR, BUSH-NELL, SHARPE, and BOYLES, JJ., concurred.